IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-00157-PAB-MJW

DEREK SCOTT, individually and on behalf of others similarly situated,

     Plaintiff,

v.

HONEYWELL INTERNATIONAL INC., a Delaware corporation,

     Defendant.

---

## ORDER

---

     This matter is before the Court on the Motion to Dismiss [Docket No. 32] filed by defendant Honeywell International Inc.  Plaintiff Derek Scott alleges that this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(d)(2).

## I.  BACKGROUND[1]

     Plaintiff brings this case on behalf of himself and a class of similarity situated entities who have installed in their homes or other structures a Honeywell TrueSTEAM humidifier manufactured by defendant.

     Defendant develops and manufactures a variety of products designed for use in

---

[1]The following facts are taken from plaintiff's amended complaint [Docket No. 29].  Plaintiff's factual allegations are presumed true unless, as noted herein, they are conclusory or contradicted by other allegations of plaintiff.  *See Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) ("conclusory and formulaic recitations" of the elements "are insufficient to survive a motion to dismiss"); *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 152 (2d Cir. 2014) (holding that "general allegations that are contradicted by more specific allegations in the Complaint" need not be accepted as true (quotation omitted)).

homes or other structures.  Docket No. 29 at 2, ¶ 6.  Defendant manufactures and

distributes the Honeywell TrueSTEAM humidifier (the "humidifier" or the "humidifiers").

*Id.* at 3, ¶ 12.  The humidifiers come in three different models for use in homes up to

3,000 square feet in size.  *Id.* at 3, ¶ 13.  The humidifiers range between $792 and

more than $1000 in price.  *Id.* at 4, ¶ 15.  From 2008 until 2013, defendant sold 206,410

humidifiers.  *Id.* at 4, ¶ 17.  Defendant's website and operating manual describe the

humidifier's qualities, benefits, and features.  *Id.* at 4-5, ¶¶ 19-20.

Plaintiff alleges that the humidifiers are "plagued by design flaws," including

scaling and the buildup of mineral deposits on the humidifiers' components.  *Id.* at 5-6,

¶ 22-23.  Scaling can cause the humidifier to overheat, its components to crack, and

blockages to form within the unit.  *Id.* at 6, ¶ 24.  Blockages outside the units can clog

exterior drains.  *Id.* at 6, ¶ 25.  Because the units are attached to the HVAC duct

system, the steam can lead to mold growth or corrosion within air ducts.  *Id.*  Due to

poor manufacturing quality and the humidifiers' inability to prevent mineral buildup, the

humidifiers must be repaired and/or replaced multiple times and often result in damage

to surrounding appliances and property.  *Id.* at 7, ¶¶ 27-28.  Defendant failed to test

humidifiers before marketing them to the public and, as a result, knew or should have

known that the humidifiers were defective and likely to fail.  *Id.* at 9, ¶¶ 44-45.

Defendant provides a five-year limited warranty (the "limited warranty") on the

humidifiers, which states

> Honeywell warrants this product to be free from defects in the workmanship
> or materials, under normal use and service, for a period of five (5) years from
> the date of purchase by the consumer.  If at any time during the warranty
> period the product is determined to defective or malfunctions, Honeywell

shall repair or replace it (at Honeywell's option).

If the product is defective,

(i) return it . . . to the place from which you purchases it; or

(ii) call Honeywell Customer care . . . .

This warranty does not cover removal or reinstallation costs. This warranty shall not apply if it is shown by Honeywell that the defect or malfunction was caused by damage which occurred while the product was in the possession of a consumer.

Honeywell's sole responsibility shall be to repair or replace the product within the terms stated above. HONEYWELL SHALL NOT BE LIABLE FOR ANY LOSS OR DAMAGE OF ANY KIND, INCLUDING ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING, DIRECTLY OR INDIRECTLY, FROM ANY BREACH OF ANY WARRANTY, EXPRESS OR IMPLIED, OR ANY OTHER FAILURE OF THIS PRODUCT. Some states do not allow the exclusion or limitation of incidental or consequential damages, so this limitation may not apply to you.

THIS WARRANTY IS THE ONLY EXPRESS WARRANTY HONEYWELL MAKES ON THIS PRODUCT.

Docket No. 32-1.[2] Customers routinely notify defendant of problems with their humidifiers. Docket No. 29 at 8, ¶ 35. Defendant's warranty claims process is "overly burdensome" and is designed to deter customers from making claims under the warranties. *Id.* Plaintiff alleges that defendant routinely declines to repair and/or replace humidifiers and, when it does repair or replace a humidifier, does not reimburse customers for damages caused by the defective unit and/or the cost of such repair and/or replacement. *Id.* at 8, ¶¶ 36-37.

---

[2]The amended complaint makes specific reference to the limited warranty and the limited warranty is central to plaintiff's claims. *See* Docket No. 29 at 7-9, ¶¶ 30, 38, 41. As a result, it is appropriate to consider the copy of the limited warranty defendant attaches as an exhibit to its brief in resolving the present motion. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)

Defendant advertised and marketed that the humidifiers were reliable and easy to maintain, but, in part because it failed to test the humidifiers before selling them to consumers, knew or should have know that its representations regarding the qualities and performance of the humidifiers were false and misleading. *Id.* at 10, ¶¶ 47-49. Defendant also falsely represented that it would honor its warranties. *Id.* at 10, ¶ 50. Defendant omits from its literature and promotional materials the fact that the humidifiers routinely fail in advance of the expiration of the limited warranty. *Id.* at 11, ¶ 53.

The claims that specifically relate to plaintiff appear to concern two humidifiers (collectively, "plaintiff's humidifiers"). On April 9, 2012, plaintiff installed a humidifier in his home (the "first humidifier"). *Id.* at 12, ¶ 61. Plaintiff chose the humidifier because of defendant's representations regarding its quality and because of the warranty. *Id.* In approximately November 2012, plaintiff's first humidifier failed and, on December 6, 2012, plaintiff replaced it with another humidifier (the "second humidifier"), presumably of the same make and model as the first humidifier,[3] and also installed an in-line water filter manufactured by defendant. *Id.* at 12, ¶¶ 63-65. Plaintiff's amended complaint does not indicate that plaintiff made a claim under the limited warranty at that time. In December 2013, plaintiff's second humidifier failed. *Id.* at 12, ¶ 66. In January 2014, plaintiff notified defendant that "his humidifier was defective." *Id.* at 13, ¶ 67. Defendant informed plaintiff that he would be responsible for installation costs of a new

---

[3]Although plaintiff's amended complaint does not expressly indicate that plaintiff replaced his first humidifier with the same model, the parties appear to operate under the assumption that both humidifiers were manufactured by defendant.

humidifier.  *Id.*  Plaintiff alleges that his "expectations that his humidifier would perform as promised were reasonably formed based on Honeywell's marketing and warranty of Honeywell Humidifiers" and that he "would not have purchased the Honeywell Humidifier or would have purchased a different product had he known that his humidifier would fail well before the end of the warranty period and not perform as promised."  *Id.* at 13, ¶¶ 68-69.

On January 21, 2014, plaintiff filed this case as a class action pursuant to Fed. R. Civ. P. 23.  Docket No. 1.  On April 28, 2014, plaintiff filed an amended complaint. Docket No. 29.  The amended complaint defines the putative "Multi-State Class" as individuals from 41 states and the District of Columbia who have owned, own, or acquired homes or other residential buildings or structures physically located in the United States, in which the humidifiers are or have been installed since 2008.  *Id.* at 17, ¶ 71.  The amended complaint defines the "Colorado Class" as those individuals who owed, own, or acquired homes or other residential buildings physically located in Colorado in which the humidifiers are or have been installed since 2008.  *Id.*  The remaining class allegations are not at issue in the present motion and, as such, the Court will not restate them in this order.

On behalf of the Multi-State Class and Colorado Class, plaintiff brings claims for breach of express warranty, negligence, negligent misrepresentation, unjust enrichment, and injunctive and declaratory relief.  Docket No. 29 at 20-35.  On behalf of the Colorado Class, plaintiff brings claims for breach of the implied warranties of merchantability and fitness for a particular purpose, failure of essential purpose, strict products liability, violation of the Colorado Consumer Protection Act ("CCPA"), Colo.

5

Rev. Stat. § 6-1-105, *et seq.*, and violation of the Colorado Products Liability Act, Colo.

Rev. Stat. § 13-21-401, *et seq. Id.*

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a complaint must allege enough factual matter that, taken as true, makes

the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671

F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged–but it has not shown–that the

pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal

quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A

plaintiff must nudge [his] claims across the line from conceivable to plausible in order to

survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's

allegations are "so general that they encompass a wide swath of conduct, much of it

innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191

(quotations omitted). Thus, even though modern rules of pleading are somewhat

forgiving, "a complaint still must contain either direct or inferential allegations respecting

all the material elements necessary to sustain a recovery under some viable legal

theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alteration marks

omitted ).

## III.  ANALYSIS

### A.  Breach of Express Warranty

To state a claim for breach of express warranty, the plaintiff must prove (1) the existence of a warranty, (2) breach of the warranty, (3) the breach proximately caused the losses claims as damages, and (4) defendant received timely notice of the breach. *Fiberglass Component Prod., Inc. v. Reichhold Chems., Inc.*, 983 F. Supp. 948, 953 (D. Colo. 1997) (citing *Palmer v. A.H. Robbins Co.*, 684 P.2d 187 (Colo. 1984)).  "When there is an express warranty, the question whether that warranty was breached is ordinarily one for the trier of fact."  *Graham Hydraulic Power, Inc. v. Stewart & Stevenson Power, Inc.*, 797 P.2d 835, 837 (Colo. App. 1990).  Defendant argues that plaintiff fails to allege sufficient facts to satisfy the second and fourth elements.

### 1.  The Limited Warranty

Express warranties related to the sale of goods are created when:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Colo. Rev. Stat. § 4-2-313(1).[4]  However, where an express warranty exists, the parties

---

[4]The parties agree that the Uniform Commercial Code ("UCC") as enacted by the Colorado General Assembly applies to plaintiff's claims.  *See* Colo. Rev. Stat. § 4-2-102(1).  Although the parties cite cases from a variety of jurisdictions, they appear to assume that Colorado law applies to each of plaintiff's claims.  As a result, the Court will apply Colorado law and, when necessary, will "look to other jurisdictions that have interpreted their UCC counterparts for guidance."  *Bd. of Cnty. Comm'rs of Cnty. of Park v. Park Cnty. Sportsmen's Ranch, LLP*, 271 P.3d 562, 568 (Colo. App. 2011).

may "limit[] the buyer's remedies . . . to repair and replacement of nonconforming goods or parts." § 4-2-719(1)(a); *see also Wenner Petroleum Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 748 P.2d 356, 357 (Colo. App. 1987) ("[i]n contracts for the sale of goods, the parties may limit or alter the damages recoverable by a buyer" (citing § 4-2-719(1))). Where "the remedy is expressly agreed to . . . it is the sole remedy," § 4-2-719(1)(b), unless "circumstances cause an exclusive or limited remedy to fail of its essential purpose." § 4-2-719(2); *Cooley v. Big Horn Harvestore Sys., Inc.*, 813 P.2d 736, 743 (Colo. 1991) ("[§ 4-2-719(1)] allow[s] great flexibility in negotiations for the provision of goods.  Section 4-2-719(2), however, reflects a legislative determination that in limited circumstances enforcement of an agreement to restrict a buyer's potential remedies would produce unconscionable results.").

Here, defendant "warrants [the humidifier] to be free from defects in the workmanship or materials . . . for a period of five (5) years from the date of purchase by the consumer," but if the product "is determined to be defective or malfunctions, Honeywell shall repair or replace it."  Docket No. 32-1.  Thus, under the plain terms of the limited warranty, defendant warrants that the humidifier will remain free from defects, but limits plaintiff's remedy to the repair or replacement of a defective humidifier.[5]  The Court first considers whether, assuming that the limited warranty is enforceable as written, defendant has breached its obligations.

### 2.  *Repair or Replace*

The parties agree that a failure to replace or repair a defective humidifier

---

[5]The Court refers to the language of the limited warranty limiting plaintiff's remedies to repair or replacement as the "repair or replacement remedy."

constitutes a breach of the limited warranty.  Defendant, however, argues that plaintiff has failed to state a claim that defendant breached the limited warranty.  Although the amended complaint contains general allegations that defendant breached its obligations under the limited warranty, *see, e.g.*, Docket No. 29 at 22, ¶ 90 ("Defendant has repeatedly denied, failed to pay in full, or failed to respond to the warranty claims made by Plaintiff and members of the Classes"), such allegations are contradicted by more specific allegations with respect to plaintiff.[6]  *See id.* at 12-13, ¶¶ 61-69.  As a result, the Court need not presume the former allegations to be true.  *See DPWN Holdings*, 747 F.3d at 152.

With respect to the first humidifier, defendant argues that the amended complaint does not allege that defendant breached its obligation to repair or replace defective products.  The Court agrees.  The amended complaint states that the first humidifier "failed, requiring replacement" and that "Plaintiff replaced his humidifier." Docket No. 29 at 12, ¶¶ 63-64.  Plaintiff alleges no other facts regarding the first humidifier, including whether he returned it to the place of purchase, notified defendant, *see* Docket No. 32-1, or otherwise provided notice to defendant in satisfaction of § 4-2-607(3) ("Where a tender has been accepted . . . [t]he buyer must within a reasonable time after he discovers or should have discovered any breach, notify the seller of [the]

---

[6]The possibility that defendant may have breached the repair or replacement remedy with respect to other members of the putative class does not, by itself, render plaintiff's claim any more or less plausible.  *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims").  As a result, allegations concerning putative class members' experiences with the humidifiers and defendant are, by themselves, insufficient to overcome deficiencies in factual allegations concerning plaintiff.

breach or be barred from any remedy.").  Moreover, the amended complaint contains no facts suggesting that defendant knew that the first humidifier was defective, but refused or was unable to repair or replace it.  *See Cheyenne Mountain Bank v. Whetstone Corp.*, 787 P.2d 210, 213 (Colo. App. 1990) (holding that § 4-2-607(3) is designed to provide seller with opportunity to correct defect).  Thus, plaintiff fails to state a claim that defendant breached the limited warranty's repair or replacement remedy with respect to the first humidifier.

With respect to the second humidifier, defendant argues that it never refused its obligation to replace or repair.  Docket No. 32 at 6.  Plaintiff alleges that, in January 2014, after notifying defendant that the second humidifier was defective, defendant "informed Plaintiff that he would have to expend money to pay for installation of a new humidifier."  Docket No. 29 at 13, ¶ 67.  However, the limited warranty expressly disclaims defendant's responsibility to pay "removal or reinstallation costs."  *See* Docket No. 32-1.  Thus, defendant's failure to pay such costs is not a breach of the limited warranty.  Although plaintiff's original complaint appears to have been filed around the time plaintiff provided defendant notice, plaintiff does not identify any other allegations in the amended complaint, which was filed on April 28, 2014, that indicate that defendant refused or otherwise failed to fulfill its obligation to repair or replace the second humidifier.  *Cf. Ranta Const., Inc. v. Anderson*, 190 P.3d 835, 840 (Colo. App. 2008) (upholding trial court's finding that "contractor had a duty to repair the windows and that, because the owners had prevented the repair, they could not rely on the contractor's failure to repair as a basis for withholding progress payments").

Because plaintiff does not allege sufficient facts to suggest that defendant

actually failed to repair or replace plaintiff's humidifiers, plaintiff fails to state a plausible claim that defendant breached the repair or replacement remedy.

### 3. Free from Defects

Plaintiff argues that, in addition to the repair or replacement remedy, the first sentence of the limited warranty guarantees that the humidifiers will be free of defects such that it breaches the limited warranty "each time a Humidifier fails within the five-year warranty period." Docket No. 38 at 4-5. Defendant argues that, because the limited warranty contains only a repair or replacement remedy, it does not guarantee the humidifier's performance in the future. Docket No. 32 at 5. The Court rejects both parties' interpretations of the limited warranty. To the extent defendant argues that the first sentence of the limited warranty has no operative effect, the Court disagrees. *See Copper Mountain Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009) ("The court should interpret a contract in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless." (internal quotations omitted)). However, the first sentence of the warranty provision does not, as plaintiff argues, provide that the failure of a humidifier is, by itself, a breach of the limited warranty. First, to interpret the limited warranty in such a way would create a conflict between the first sentence and the repair or replacement remedy.

Second, the first sentence of the limited warranty is properly considered a "warranty of future performance," a warranty that expressly "guarantee[s] that the product will perform as promised in the future." *Boyd v. A.O. Smith Harvestore Prods., Inc.*, 776 P.2d 1125, 1128 (Colo. App. 1989). "A repair or replace warranty does not

11

warrant the product's performance in the future.  Rather, it provides that if a product fails or becomes defective, the seller or manufacturer will repair or replace within a stated period." *Id.* Warranties of future performance have the effect of extending the time period in which a buyer may bring an action to enforce an express warranty from the time of tender to "when the breach is or should have been discovered." § 4-2-725(2).  For that reason, contracts with a repair or replacement guarantee often also contain a warranty of future performance.  *Compare Smith v. Union Supply Co.*, 675 P.2d 333, 335 (Colo. App. 1983) ("the contract contains both a warranty to effect repairs for five years, and an explicit guarantee as to the future performance of the goods"), *and Hersh Cos. Inc. v. Highline Village Assocs.*, 30 P.3d 221, 226 (Colo. 2001) ("[contract] guaranteed that the work would be free from defect for five years and that Hersh would repair or replace any such work that became defective during the term of the guarantee"), *with Boyd*, 776 P.2d at 1128-29 (concluding that, where limited warranty contained only repair or replace guarantee, breach of warranty claim accrued at the time the product was tendered).  Including both types of warranties has the practical effect of allowing a buyer to bring a breach of warranty claim after the tender of goods, when "plaintiff discovers or should have discovered the defendant's refusal or inability to maintain the goods as warranted in the contract."  *Smith*, 675 P.2d at 335; *see also Hersh*, 30 P.3d at 225-226 (relying on § 4-2-725(2) in holding that breach of warranty claim did not accrue until plaintiff discovered "defendant's refusal or inability to comply with the warranties made").  Here, the first sentence of the limited warranty provides a guarantee of future performance, which functions to extend the time by

12

which plaintiff can assert a breach of warranty claim for failure to repair or replace.  *Cf.*

*Smith*, 675 P.2d at 335.  Because the repair or replacement remedy is exclusive,

however, the limited warranty is not breached until the humidifier "is determined to be

defective or malfunctions" and defendant does not provide the required remedy.  *See*

*Smith*, 675 P.2d at 335.  The mere failure of a humidifier is not, by itself, sufficient to

breach the limited warranty, and plaintiff cannot therefore sustain a claim for breach of

the limited warranty on that basis alone.  *See Cooley*, 813 P.2d at 740-41 (suggesting

that, where warranty contains repair or replacement remedy, defendant should be given

opportunity to correct defects).   Defendant's motion to dismiss on this issue is therefore

granted.

### 4.  Failure of Essential Purpose

Plaintiff argues that the limited warranty's exclusive remedy of repair or

replacement is unenforceable because it fails of its essential purpose.  Docket No. 38 at

6-7.  "'[W]here an apparently fair and reasonable clause because of circumstances fails

in its purpose or operates to deprive either party of the substantial value of the bargain,

it must give way to the general remedy provisions of the [UCC].'"  *Cooley*, 813 P.2d at

744 (quoting § 4-2-719 comment 1 (1973)).  Determining whether a limited or exclusive

remedy fails of its essential purpose raises two questions: one, what is the essential

purpose of the exclusive remedy and, two, did the exclusive remedy fail to accomplish

such purpose?  *Id.*  As to the first question, where, as here, the exclusive remedy is a

promise to repair or replace, the essential purpose is to supply assurance to the buyer

"that within a reasonable period of time defective goods will be put into the condition

they were warranted to be in at the time they were purchased." *Id.* Plaintiff does not argue otherwise.

Second, "[a] remedy fails of its essential purpose if it operates to deprive a party of the substantial value of the contract." *Id.* at 744-45. The Colorado Supreme Court has suggested that, in a suit for breach of warranty for the failure to repair and or replace, a plaintiff seeking to establish that an exclusive remedy of repair or replacement failed its essential purpose must show that the product was defective, that "defendants had an opportunity to repair or replace the defects, that they were unable to do so, and that their inability to effectively repair or replace substantially affected the value of the product" to plaintiff's detriment. *Id.* at 743 n.7; *see also Curragh Queensland Mining Limited v. Dresser Indus., Inc.*, 55 P.3d 235, 241 (Colo. App. 2002) ("When a seller cannot cure defects by repeated repair attempts, a remedy limited to repair fails of its essential purpose."); *Level 3 Commc'ns, LLC v. Liebert Corp.*, No. 03-cv-1829-EWN-CBS, 2005 WL 1657135, at *11 (D. Colo. July 14, 2005) (same); *Rose v. Colo. Factory Homes*, 10 P.3d 680, 684 (Colo. App. 2000) (same). Stated more broadly, a seller's action or inaction with respect to a limited remedy can cause the remedy to fail of its essential purpose. *See Leprino v. Intermountain Brick Co.*, 759 P.2d 835, 837 (Colo. App. 1988) (citing *Jones v. McKnight Corp. v. Birdsboro Corp.*, 320 F. Supp. 39, 43 (N.D. Ill. 1970) (construing warranty limiting remedy to repair or replacement under UCC and concluding that plaintiff "was entitled to assume that defendants would not be unreasonable or wilfully dilatory in making good on their warranty [to repair] in the event of defects in the machinery and equipment")). Here,

plaintiff alleges that he informed defendant that his humidifier was defective and that

defendant responded that plaintiff would be responsible for installation costs of a new

humidifier.  This allegation does not, by itself, make it plausible that defendant was

given the opportunity to replace plaintiff's humidifiers, but failed to do so.  Plaintiff

identifies no other allegations in the amended complaint which bear on whether

defendant was given the opportunity, but failed, to repair or replace plaintiff's

humidifier.[7]  Thus, plaintiff has failed to state a plausible claim that defendant, upon

being given the opportunity, was unable to put the humidifier "into the condition [it was]

warranted to be in at the time [it was] purchased," *Cooley*, 813 P.2d at 744, that

defendant failed to cure the humidifier's defects with repeated repair attempts, or that

defendant's action or inaction otherwise caused the repair or replacement remedy to fail

its essential purpose.  *Cf. Curragh*, 55 P.3d at 241-42 ("despite numerous attempts

over the course of seven years, Sellers were unsuccessful and then abandoned their

attempts to cure the defects in the Dragline").

Plaintiff argues that failure of essential purpose occurs in this context when the

goods at issue have latent defects.  Docket No. 38 at 8; *see also* Docket No. 29 at 9, ¶¶

---

[7]Although plaintiff does not explicitly argue that defendant's refusal to pay installation costs for a replacement humidifier, by itself, caused the repair or replacement remedy to fail of its essential purpose, such an argument finds no support in the complaint.  Plaintiff alleges that the humidifiers range in price from $792 to over $1000, exclusive of installation costs.  Docket No. 29 at 4, ¶ 15.  However, the amended complaint contains no facts suggesting what plaintiff's installation costs may have been or that such costs were significant enough to cause the repair or replacement remedy to fail of its essential purpose with respect to plaintiff.  *Cf. Reichhold Chem.*, 983 F. Supp. at 960 (reasoning that replacement remedy may fail its essential purpose because value of warranted component of air conditioning unit represented a fraction of plaintiff's total cost of recalling and replacing air conditioning units containing component).

42-43.  Defendant responds that, although latent defects may cause an exclusive remedy of return of purchase price to fail of its essential purpose, latent defects do not have the same effect on the repair or replace remedy in this case.  Docket No. 39 at 4.  "One situation in which a limitation of remedy to return of the purchase price has been held to fail of its essential purpose is when goods have latent defects which are not discoverable upon receipt and reasonable inspection."  *Leprino*, 759 P.2d at 837.  Although courts typically consider whether latent defects cause a remedy's essential purpose to fail when the limited remedy provides for a refund of the purchase price, *see, e.g.*, *id.*; *Advanced Tubular Prods, Inc. v. Solar Atmospheres, Inc.*, 149 F. App'x 81, 85 (3d Cir. 2005) (unpublished) (collecting cases), it is not clear, as defendant suggests, that the presence of latent defects cannot cause a repair or replacement remedy to fail its essential purpose.  *See Webco Indus., Inc. v. Thermatool Corp.*, 278 F.3d 1120, 1131 (10th Cir. 2002) (applying Michigan law) ("We are not convinced that, with respect to the issue of failure of essential purpose, a warranty limiting remedies to repair or replacement is materially distinguishable from one limiting remedies to repair or refund of the purchase price.").  Here, the amended complaint alleges that the humidifiers plaintiff purchased "contained defective heating coils and other component parts" that were present, but undetectable at the time plaintiff acquired the humidifiers.  Docket No. 29 at 9, ¶¶ 42-43.  However, plaintiff does not explain how such defects render the repair or replacement remedy ineffective or otherwise deprive him of the substantial value of his purchase.  The amended complaint does not contain sufficient facts to support such an assertion.  *Cf. Reichhold Chem.*, 983 F. Supp. at 960 (concluding that replacement remedy failed its essential purpose when plaintiff could

not have reasonably discovered latent defect and defective product's value was a fraction of the "$1.2 million" plaintiff would spend "in recalling and retrofitting the air conditioning units containing housings made with" defective product).

Plaintiff argues that the limited warranty's repair or replace remedy fails of its essential purpose because it allows defendant to "replace a defective product with the same defective product."  Docket No. 38 at 4; *see* Docket No. 29 at 8, ¶ 40.  Although it is possible that defendant would have replaced plaintiff's humidifier with another defective humidifier, the amended complaint contains no facts suggesting that defendant did so.  Plaintiff alleges that he first notified defendant that the humidifier was defective in January 2014, Docket No. 29 at 13, ¶ 67, and filed his complaint on January 21, 2014.  Docket No. 1.  The possibility that defendant would have replaced plaintiff's humidifiers with defective humidifiers does not render plausible plaintiff's claim that the repair or replacement remedy failed of its essential purpose. *See Khalik*, 671 F.3d at 1191.

For the foregoing reasons, plaintiff has failed to state a claim that the limited warranty's repair or replacement remedy failed of its essential purpose.

### 5. *Unconscionability*

Plaintiff argues that the repair or replacement remedy is unconscionable to the extent it precludes him from recovering damages under any other theory.  Docket No. 38 at 6, 11.  Under the UCC, a contract term limiting parties' ability to recover consequential damages is enforceable unless the provision is unconscionable.  § 4-2-

719(3).[8]  Whether a contract for the sale of goods was unconscionable at the time it

was made is a matter of law.  § 4-2-302.  Because the Colorado statute does not define

the term, courts look to Colorado common law in determining whether a contractual

provision is unconscionable.  *Mullan v. Quickie Aircraft Corp.*, 797 F.2d 845, 850 (10th

Cir. 1986) (applying Colorado law); *see also Leprino*, 759 P.2d at 837.

Unconscionability is evidenced by "overreaching on the part of one of the parties" and

"contract terms which are unreasonably favorable to that party."  *Davis v. M.L.G. Corp.*,

712 P.2d 985, 991 (Colo. 1986).  The Colorado Supreme Court has identified the

following factors as relevant to a finding of unconscionability:

> [1] standardized agreement executed by parties of unequal bargaining
> strength, [2] lack of opportunity to read or become familiar with the document
> before signing it, [3] use of fine print in the portion of the contract containing
> the provision, [4] absence of evidence that the provision was commercially
> reasonable or should reasonably have been anticipated, [5] the terms of the
> contract, including substantive unfairness, [6] the relationship of the parties,
> including factors of assent, unfair surprise and notice, and [7] all the
> circumstances surrounding the formation of the contract, including its
> commercial setting, purpose and effect.

*Id.* (citations omitted).  These factors implicate both procedural and substantive

unconscionability.  *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1055 n.9 (Colo.

2011).  Absent circumstances not present here, *see id.*, a party seeking to avoid the

enforcement of a contract on unconscionability grounds must show both procedural and

---

[8]Plaintiff does not appear to contend that he suffered personal injury and, as a
result, is not entitled to a presumption of unconscionability.  *See NEC Techs., Inc. v.
Nelson*, 478 S.E.2d 769, 771 (Ga. 1996) (noting that Georgia Uniform Commercial
Code did not provide that a limitation on consequential property damage is prima facie
unconscionable); *Gladden v. Cadillac Motor Car Div., Gen. Motors Corp.*, 416 A.2d 394,
403 (N.J. 1980) ("Because this case involves only property damage, plaintiff does not
have the benefit of this presumption of unconscionability.").

substantive unconscionability.  *Vernon v. Qwest Commc'ns Int'l, Inc.*, 925 F. Supp. 2d

1185, 1194 (D. Colo. 2013) (applying Colorado law concerning unconscionability).

Plaintiff appears to argue that the repair or replacement remedy is

unconscionable because it fails to satisfy § 4-2-316(2).  *See* Docket No. 38 at 11 (citing

*Hiigel v. Gen. Motors Corp.*, 544 P.2d 983, 989-990 (Colo. 1975) (citing § 4-2-316(3))).

However, the limited warranty does not purport to "exclude or modify" defendant's

liability for implied warranties (except as to the duration of any such implied warranties,

a modification which plaintiff does not challenge).  *See* § 4-2-316(2).  Rather, the limited

warranty restricts plaintiff's remedy for such claims to repair or replacement.  *See*

Docket No. 32-1; *cf. Intrastate Piping & Controls, Inc. v. Robert-James Sales, Inc.*, 733

N.E.2d 718, 721-22 (Ill. App. Ct. 2000) ("[W]here the goods provided by Bristol are

defective, the terms and conditions of the contract limit recovery to the price of the

defective material.  This is clearly a limit on remedy rather than a waiver of warranty . . .

[i]t does not attempt to limit the warranty of merchantability by disclaiming liability . . . ."

(quotations omitted)).  Because the limited warranty does not disclaim liability, but

instead limits plaintiff's remedy, the limited warranty must comply with § 4-2-719, but

need not comply with § 4-2-316(2).  § 4-2-316(4); *see also* § 4-2-316 comment 2

("Under subsection (4) the question of limitation of remedy is governed by the sections

referred to rather than by this section.").  Plaintiff's argument that the limited warranty

fails to comply with § 4-2-316(2) is therefore without merit.

Plaintiff maintains the repair or replacement remedy is unconscionable because

it does not protect plaintiff and because "Defendant's disclaimer is not the product of

negotiation between the parties, nor does Defendant bring the buyer's attention to the disclaimer prior to purchase of the Humidifiers." Docket No. 38 at 11. Although plaintiff does not identify allegations in support of this argument, the amended complaint alleges that the repair or replacement remedy is unconscionable because (1) it does not provide coverage for removal and reinstallation costs, (2) the humidifiers were defective at the time of purchase, and (3) plaintiff lacked "any meaningful choice with respect to the warranty terms." Docket No. 29 at 22, ¶ 92. As to plaintiff's first contention, the limited warranty's failure to provide removal and installation costs may bear on the substantive unfairness of the limited warranty; however, plaintiff does not allege any facts concerning the costs of removal and installation of the humidifiers so as to state a plausible claim that the repair or replacement remedy was commercially unreasonable or unreasonably favorable to defendant. *Cf. Leprino*, 759 P.2d at 837 (holding that cost of removing defective product and reinstalling new product exceeding value of product did not, by itself, render limited remedy of return of purchase price unconscionable).

To the extent plaintiff argues that the limited warranty is unconscionable because it allows defendant to replace a defective product with the same defective product, *see* Docket No. 38 at 6; Docket No. 29 at 22, such a danger is theoretically present with every repair or replacement limited remedy and cannot, by itself, be sufficient to render the repair or replacement remedy in this case procedurally and substantively unconscionable. *See Leprino*, 759 P.2d at 836. Plaintiff argues that, because defendant knew the humidifiers were defective at the time it entered into the limited warranty with plaintiff, defendant knew that it could not effectively satisfy the repair or

replacement remedy.  Docket No. 29 at 9-10, ¶¶ 43-46.  However, plaintiff does not explain how, if at all, defendant's subjective knowledge bears on the question of unconscionability.  Plaintiff's argument is therefore unpersuasive.

The Court construes plaintiff's arguments regarding the lack of negotiation or meaningful choice regarding the terms of the limited warranty as an argument that the repair or replacement remedy is procedurally unconscionable because it is an adhesion contract and the parties were of unequal bargaining power.  *See* Docket No. 38 at 11; Docket No. 29 at 22, ¶ 92; *id.* at 9, ¶ 43.  Although the limited warranty may have been unilaterally drafted by defendant and offered to plaintiff without negotiation, the amended complaint provides no suggestion that plaintiff could not have readily obtained a humidifier from a different manufacturer, which he admits were "available on the market."  Docket No. 29 at 11, ¶ 52; *id.* at 13, ¶ 69 ("Plaintiff . . . would have purchased a different product had he known that his humidifier would fail").  *See Ad Two, Inc. v. City & Cnty. of Denver*, 983 P.2d 128, 132 (Colo. App. 1999).  As a result, plaintiff's allegation that the parties were of "grossly unequal" bargaining power lacks factual support and is therefore conclusory.  *See* Docket No. 29 at 9, ¶ 43.  Moreover, under Colorado law, form contracts are not necessarily unenforceable, *Edge Telecom, Inc. v. Sterling Bank*, 143 P.3d 1155, 1163 (Colo. App. 2006), and a "standardized agreement between parties with unequal bargaining power . . . by itself is not enough for a finding of procedural unconscionability."  *Vernon*, 925 F. Supp. 2d at 1195 (citing *Mullan*, 797 F.2d 850-51).

Plaintiff does not identify any additional facts – and none are apparent – in the

amended complaint that would provide any basis upon which to conclude that the repair

or replacement remedy was both procedurally and substantively unconscionable.  As a

result, plaintiff has failed to state a claim that the repair or replacement remedy is

unenforceable by reason of unconscionability.[9]

### B.  Remaining Claims

Defendant argues that plaintiff's remaining claims are barred because the limited

warranty "precludes implied warranty claims."  Docket No. 32 at 10.  As discussed

above, the limited warranty does not purport to disclaim liability for implied warranties,

but rather limits remedies for such claims to repair or replacement.  *See Jackson v.*

*Swift-Eckrich*, 830 F. Supp. 486, 494 (W.D. Ark. 1993) (noting distinction between UCC

code provisions that allow for exclusions or disclaimers of warranty with provisions

allowing a limitation of remedies).  The question therefore becomes whether the repair

---

[9]Although parties are ordinarily afforded an opportunity to present evidence with respect to a challenged provision's "commercial setting, purpose, and effect, to aid the court in making the determination," § 4-2-302, plaintiff has failed to allege sufficient facts to raise a genuine question as to whether the repair or replacement remedy is unconscionable. *Compare Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co.*, 936 F. Supp. 2d 933, 943 (N.D. Ill. 2013) (granting Fed. R. Civ. P. 12(b)(6) motion to dismiss claim that contract for sale of goods should be rescinded on unconscionability grounds), *with Bonanno v. The Quizno's Franchise Co. LLC*, No. 06-cv-02358-WYD-KLM, 2008 WL 638367, at *9 (D. Colo. March 5, 2008) (concluding that plaintiffs pled sufficient facts to state a plausible claim for declaratory judgment that franchise agreements were unconscionable).  Plaintiff does not otherwise request a hearing or the opportunity to present additional evidence.  As a result, the Court concludes that the presentation of further evidence is not required to resolve plaintiff's arguments regarding the unconscionability of the repair or replacement remedy. *See Guaranteed Foods of Neb., Inc. v. Rison*, 299 N.W.2d 507, 512 (Neb. 1980) ("An unsupported conclusory allegation . . . that a contract is unenforceable as unconscionable is not enough.  Sufficient facts surrounding the commercial setting, purpose and effect of a contract at the time it was made should be alleged so that the court may form a judgment as to the existence of a valid claim of unconscionability" (quotations omitted)).

or replacement remedy effectively bars plaintiff's remaining claims.

### 1. *Breach of Implied Warranties*

Because plaintiff has failed to state a claim that the repair or replacement remedy is unenforceable, the repair or replacement remedy, by the terms of the limited warranty, limits plaintiff's remedies for breach of any implied warranties.  *See* § 4-2-719(2).  As discussed above, plaintiff fails to state a claim that defendant failed to comply with its obligations arising from the repair or replacement remedy.  In light of these facts, plaintiff fails to identify any remaining aspect of its breach of implied warranty claim that survives, and none is apparent.  *Cf. Jackson*, 830 F. Supp. at 494 (ruling that exclusive remedy of return of purchase price limited the plaintiff's ability to recover for implied warranty claim).  To whatever extent plaintiff's implied warranty claim survives, defendant argues that plaintiff's allegations regarding the condition and failure of his humidifiers are conclusory and insufficient to state a claim.  The Court agrees.  Plaintiff does not state why his first humidifier failed, although he implies that it was due to "mineral buildup."  Docket No. 29 at 12, ¶¶ 63, 65.  The amended complaint, however, identifies a variety of problems that such mineral buildup "can cause," including overheating, blockages, cracking of components, and resulting drainage problems.  *Id.* at 6, ¶¶ 24-25.  Plaintiff does not identify why his second humidifier failed.  *See id.* at 12-13, ¶¶ 65-67.  Plaintiff alleges no specific facts concerning how the humidifiers that he purchased failed to satisfy the warranties of merchantability and fitness for a particular purpose.  *See* § 4-2-314.  As a result, plaintiff fails to state a plausible claim for relief for breach of implied warranties.

### 2. *Tort Claims*

Defendant argues that plaintiff's claims for strict products liability, negligence, and negligent misrepresentation are barred by the economic loss doctrine. Docket No. 32 at 9. The economic loss rule is intended to maintain a boundary between contract law and tort law. *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1259 (Colo. 2000). "[A] party suffering only economic loss from the breach of an express or implied contractual duty may not asset a tort claim for such a breach absent an independent duty of care under tort law." *Id.* at 1264. In order to be considered independent of contract, a duty of care must satisfy two conditions: "[f]irst, the duty must arise from a source other than the relevant contract"; and "[s]econd, the duty must not be a duty also imposed by the contract." *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009) (citing *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1259-62 (Colo. 2000)). In other words, "even if the duty would be imposed in the absence of a contract, it is not independent of a contract that memorializes it." *Id.* (quotation and citation omitted).

Plaintiff argues that the economic loss rule should not apply to bar his claims for multiple reasons. First, plaintiff contends that defendant "declines to reimburse customers for all damage caused by the defective units, making the economic loss doctrine inapplicable." Docket No. 38 at 9. Second, plaintiff argues that negligence imposes upon defendant a duty to act with reasonable care to avoid foreseeable injury to others and that strict products liability imposes upon defendant to design and manufacture products that are not unreasonably dangerous. Docket No. 38 at 10.

However, the plaintiff alleges only damage to the humidifier itself and removal/reinstallation costs. Defendant's duty to compensate him for such damages does not arise independently of the limited warranty. Rather, as the Colorado Supreme Court has recognized, "[w]hen a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong." *AZCO*, 10 P.3d at 1261. To the extent tort duties related to his negligence and strict product liability claims exist independently of the limited warranty, plaintiff alleges only that his humidifiers "failed" or were "defective," Docket No. 29 at 12-13, ¶¶ 63, 67, allegations which are conclusory and insufficient to state a claim that his humidifiers created any unreasonable risk of injury. Thus, plaintiff fails to state a claim for negligence and strict products liability.

Third, plaintiff argues that his negligent misrepresentation claim arises independently of the contract between the parties. Docket No. 38 at 9. Plaintiff contends that defendant made material misrepresentations that induced plaintiff to purchase the humidifiers and made material omissions by failing to disclose that the humidifiers had latent defects. *Id.* In *Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69, 72 (Colo. 1991), the Colorado Supreme Court held that representations made prior to the execution of an agreement to induce the purchase of a product may provide a basis for an independent tort claim for negligent misrepresentation. *See also Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1162-63 (10th Cir. 2008) (citing *Keller* and holding that misrepresentation analogous to misrepresentation that induces another party to entered into contract was not barred by economic loss rule). Thus, under *Keller*, because plaintiff alleges that defendant's pre-purchase

25

misrepresentations regarding the quality of the humidifiers and the limited warranty were aimed at inducing plaintiff to purchase a humidifier, plaintiff's claim is not barred by the economic loss rule.

Defendant also argues that plaintiff fails to state a claim for negligent misrepresentation.  Docket No. 32 at 13.  The elements of a claim of negligent misrepresentation are: (1) one in the course of his or her business, profession or employment; (2) makes a misrepresentation of a material fact, without reasonable care; (3) for the guidance of others in their business transactions; (4) with knowledge that his or her representations will be relied upon by the injured party; and (5) the injured party justifiably relied on the misrepresentation to his or her detriment.  *Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011).  Plaintiff alleges that he "chose this particular brand and model of humidifier because of the representations made by Honeywell with respect to the quality of the humidifier and the warranty with which it is advertised" and that his "expectations that his humidifier would perform as promised were reasonably formed based on Honeywell's marketing and warranty of Honeywell Humidifiers."  Docket No. 29 at 12-13, ¶¶ 61-68.  According to the amended complaint, defendant's website and the humidifiers' operating manual, which plaintiff does not allege that he read, contained representations regarding the humidifiers' quality.  *Id.* at 4-5, ¶¶ 19-20.  However, such representations do not pertain to the defects plaintiff alleges were present in his humidifiers.  *Cf. id.* at 12-13, ¶¶ 63-66.  Nonetheless, the amended complaint generally alleges that defendant touted its humidifiers as workable products,

representations which turned out to be false, that plaintiff justifiably relied upon.[10]  At

this stage, such allegations are sufficient to sustain plaintiff's claim for negligent

misrepresentation.[11]

### 3. CCPA

Defendant argues that plaintiff fails to state a claim for deceptive trade practices

under the CCPA.  Docket No. 38 at 14-15.  The Court agrees.  Under the CCPA, a

plaintiff bringing a private claim for relief must show:

> (1) that the defendant engaged in an unfair or deceptive trade practice; (2)
> that the challenged practice occurred in the course of defendant's business,
> vocation, or occupation; (3) that it significantly impacts the public as actual
> or potential consumers of the defendant's goods, services, or property; (4)
> that the plaintiff suffered injury in fact to a legally protected interest; and (5)
> that the challenged practice caused the plaintiff's injury.

---

[10]It is not entirely clear that plaintiff can maintain a negligent misrepresentation claim based upon defendant's omissions regarding the quality of the humidifiers.  *See Mullen v. Allstate Ins. Co.*, 232 P.3d 168, 174 (Colo. App. 2009) (holding that, because insurer was not obligated to provide information regarding other types of coverage, it did not commit negligent misrepresentation by omission by failing to disclose facts concerning the coverage of additional insurance); *Haney v. Castle Meadows, Inc.*, 839 F. Supp. 753, 757 (D. Colo. 1993) (concluding that, in the real estate vendor/purchaser context, vendor's failure to disclose a latent defect sounds in fraud, not negligence).  However, because the amended complaint contains sufficient affirmative misrepresentations to sustain plaintiff's claim, the Court need not decide whether defendant's alleged omissions are independently actionable.

[11]Although the Tenth Circuit does not appear to have explicitly decided whether negligent misrepresentation claims arising under Colorado law must be plead with particularity, plaintiff's negligent misrepresentation claim survives under either Fed. R. Civ. P. 8(a) or 9(b).  *See Heaton v. Am. Brokers Conduit*, 496 F. App'x 873, 876 (10th Cir. 2012) (unpublished) (affirming district court's determination that plaintiff failed to plead with particularity negligent misrepresentation claim under Fed. R. Civ. P. 9(b)); *Blixseth v. Cushman & Wakefield of Colo., Inc.*, No. 12-cv-00393-PAB-KLM, 2013 WL 5446791, at *8 (D. Colo. Sep. 30, 2013) ("An action for negligent misrepresentation is an action in fraud; thus, plaintiff's pleading of fraud must meet the standard set forth in Rule 9(b) (citation omitted) (citing *Bushnell v. Cook*, 718 P.2d 665, 668 (Mont. 1986))).

*Crowe v. Tull*, 126 P.3d 196, 201 (Colo. 2006).  Plaintiffs must satisfy "the heightened pleading requirements [of] Rule 9(b) to prove a deceptive or unfair trade practice." *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1120-21 (D. Colo. 2011).  This requires plaintiff to set forth "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quotations omitted).

Plaintiff alleges that defendant engaged in the deceptive trade practice of knowingly making a false representation as to the quality or character of goods and representing that goods were of a particular quality or grade when it knew that they were not.  Docket No. 29 at 31, ¶ 132 (citing Colo. Rev. Stat. 6-1-105(1)(e), (g)).  Although plaintiff attempts to broaden this claim in his brief by vaguely arguing that all representations made by defendant were false, *see id.* at 15, plaintiff's complaint alleges only that defendant falsely warranted that the humidifiers would be free from defects in workmanship or materials for a period of five years.  *Id.* at 31-32, ¶¶ 133-134.

Because the statements that make up plaintiff's CCPA claim are contained within the limited warranty, such promises are contractual and cannot constitute a misrepresentation "unless the promisor did not intend to honor it at the time it was made."  *See Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 148 (Colo. 2003).  Defendant argues that plaintiff failed to allege sufficient facts upon which to infer that defendant had the requisite intent.  Docket No. 32 at 14-15.  Plaintiff does not directly respond to this argument.  However, the amended complaint

contains allegations regarding defendant's intent to honor the limited warranty.  *See,*
*e.g.*, Docket No. 29 at 7, ¶ 34 ("Defendant . . . has no intention of providing . . . the
services set forth in their [sic] warranty"); *id.* at 8, ¶ 35 ("Defendant maintains an overly
burdensome warranty claims process that is designed to, and does, deter customers
from making claims").  Such allegations suffice at this stage of the pleadings.

### 4. Unjust Enrichment

Defendant argues that plaintiff's claim for unjust enrichment is barred by the
limited warranty because both claims cover the same subject matter.  Docket No. 32 at
10.  Plaintiff argues that, because his unjust enrichment claim is alternatively pled, it is
not barred by the limited warranty.  Docket No. 38 at 12.

"Unjust enrichment is a claim in quasi-contract based on principles of restitution."
*W. Ridge Grp., LLC v. First Trust Co. of Onaga*, 414 F. App'x 112, 120 (10th Cir. 2011)
(unpublished) (applying Colorado law).  "In general, a party cannot recover for unjust
enrichment by asserting a quasi-contract when an express contract covers the same
subject matter because the express contract precludes any implied-in-law contract."
*Interbank Investments, LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816
(Colo. App. 2003).  Colorado courts recognize two exceptions to this general rule.
"First, a party can recover on a quasi-contract when the implied-in-law contract covers
conduct outside the express contract or matters arising subsequent to the express
contract.  Second, a party can recover on a quasi-contract when the party will have no
right under an enforceable contract," such as "when an express contract failed or was
rescinded."  *Id.* (citations and quotations omitted).  Plaintiff does not argue that the first

exception is applicable and the Court finds no reason to so conclude.  As for the

second exception, the threshold determination is not the adequacy of the remedy under

an express contract, but rather its enforceability.  *Id.* at 818-19.  Although plaintiff may

assert that the remedy under the limited warranty was unsatisfactory, the limited

warranty did not leave him without a remedy.  As a result, the unjust enrichment claim is

precluded by the limited warranty.  *Cf. Rossetti Assocs., Inc. v. Santa Fe I25 Denver,*

*LLC*, No. 09-cv-00338-WJM-BNB, 2011 WL 834177, at *7 (D. Colo. March 4, 2011)

(dismissing breach of contract claim and concluding that, "because there is an

enforceable contract between the two parties, the express contract precludes the unjust

enrichment claim" (citing *Interbank*, 77 P.3d at 818-19).

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's Motion to Dismiss [Docket No. 32] is **GRANTED** in

part and **DENIED** in part as indicated in this order.  It is further

**ORDERED** that plaintiff's claims for breach of express warranty, failure of

essential purpose, breach of the implied warranties of merchantability and fitness for a

particular purpose, negligence, strict products liability, violation of the Colorado

Products Liability Act, and unjust enrichment are **DISMISSED**.

DATED March 30, 2015.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

30